# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

PAYAM TEHRANI, individually and on behalf of all others similarly situated,

Plaintiff,

v.

JOIE DE VIVRE HOSPITALITY, LLC, a Delaware limited liability company

Defendant.

Case No.

**CLASS ACTION COMPLAINT**

**DEMAND FOR JURY TRIAL**

## CLASS ACTION COMPLAINT

Plaintiff Payam Tehrani ("Tehrani" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Joie De Vivre Hospitality, LLC ("JDV" or "Defendant JDV") to stop JDV from violating the Telephone Consumer Protection Act by sending unsolicited, autodialed text messages to consumers, and to otherwise obtain injunctive and monetary relief for all persons injured by the conduct of JDV. Plaintiff, for his Complaint, alleges as follows upon personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by his attorneys.

### INTRODUCTION TO THE TCPA

1.      When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3). 20. By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

2.      The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

3.      Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

4.      According to online robocall tracking service "YouMail," 5.2 billion robocalls were placed in March 2019 alone, at a rate of 168.8 million per day. www.robocallindex.com (last visited April 9, 2019). YouMail estimates that in 2019 robocall totals will exceed 60 billion. *See id*.

5.      The FCC also has received an increasing number of complaints about unwanted calls, with 150,000 complaints in 2016, 185,000 complaints in 2017, and 232,000 complaints in 2018. FCC, Consumer Complaint Data Center, www.fcc.gov/consumer-help-center-data.

**HOTEL VITALE IS MARKETED TO POTENTIAL CLIENTS
USING AUTODIALED TEXT MESSAGE MARKETING**

6.      Part of JDV's marketing plan for Hotel Vitale includes the sending of text messages *en masse* to consumers.

7.      Such text messages are sent using an autodialer without the necessary express written consent.

8.      Plaintiff received 3 autodialed text messages to his cellular phone from Hotel Vitale. One text message in-particular made reference to a promotion by Hotel Vitale.

9.      In response to these text messages, Plaintiff files this class action lawsuit seeking injunctive relief, requiring JDV to cease from sending unsolicited, autodialed text messages to consumers' cellular telephone numbers, as well as an award of statutory damages to the members of the Class.

CLASS ACTION COMPLAINT
-2-

## PARTIES

10.     Plaintiff Tehrani is a Sherman Oaks, California resident.

11.     Defendant JDV is a Delaware company with its head office located in San Francisco, California. JDV does business throughout this District, California and the United States.

## JURISDICTION AND VENUE

12.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

13.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant JDV has its headquarters in this District, and because the wrongful conduct giving rise to this case was directed from this District. In addition, Hotel Vitale is located in this District.

## COMMON ALLEGATIONS

### JDV FOUNDED HOTEL VITALE AND IS STILL ACTIVE IN ITS MANAGEMENT

14.     Hotel Vitale was founded in 2004 by JDV.[1]

15.     JDV handles the hospitality services for Hotel Vitale including sales, reservations, websites and marketing.

16.     JDV maintains a page on its website JDVHotels.com dedicated to the sales and promotion for Hotel Vitale:

---

[1] https://www.businesswire.com/news/home/20041217005512/en/Joie-de-Vivre-Introduces-Hotel-Vitale-Luxury

CLASS ACTION COMPLAINT

-3-

HOTEL VITALE      ABOUT   STAY   EAT & DRINK   SPA   SPECIALS   MEETINGS & EVENTS   PLAY   BC







| Plan ahead and Save more! | Stay More Save More | Vitale Perks |
|---|---|---|
| Book in advance and save big on your next stay. | Immerse yourself in the city by the bay's hippest neighborhoods when you stay like a local this winter. Save | We'll throw in extra perks when you book directly through our site. Let us make your stay even better! [2] |

17.     On the page that is shown above, consumers can book reservations for Hotel Vitale and take advantage of different promotions the hotel is promoting.

18.     The promotions include Chase'n the Dream, a promotion in which consumers get various hotel discounts and attend an event at the Chase Center,[3] and Egg-celent Stay in SF, which provides the consumer with a daily $55 breakfast credit at Hotel Vitale's in-house Americano Restaurant:[4]

[2] https://www.jdvhotels.com/hotels/california/san-francisco/hotel-vitale/specials
[3] https://www.jdvhotels.com/hotels/california/san-francisco/hotel-vitale/specials/chase-n-the-dream
[4] https://www.jdvhotels.com/hotels/california/san-francisco/hotel-vitale/specials/egg-celent-stay-in-sf





## Chase 'n the Dream

The inaugural season of the Chase Center in San Francisco officially kicked off September 6th, and Hotel Vitale wants to make your experience even better!

## Egg-celent Stay in SF

Indulge in breakfast delights at Americano Restaurant with a $55 breakfast credit.

**5**

**JDV SENDS UNSOLICITED, AUTODIALED
TEXT MESSAGES TO PROMOTE HOTEL VITALE**

19.     On September 7, 2019 at 4:53 AM, Plaintiff Tehrani received an autodialed text message on his cell phone from JDV using phone number 415-697-3367:

Sat, Sep 7, 4:53 AM

Please disregard the previous 2 text messages. These were sent in error and we truly apologize for the inconvenience.

20.     On September 8, 2019 at 2:23 AM, Plaintiff received a second autodialed text message on his cell phone from JDV, again using phone number 415-697-3367. This text message is identical to the text message Tehrani received on September 7, 2019:

---

[5] https://www.jdvhotels.com/hotels/california/san-francisco/hotel-vitale/specials

Sun, Sep 8, 2:23 AM

Please disregard the previous 2 text messages. These were sent in error and we truly apologize for the inconvenience.

21.     Later on September 8, 2019, at 3:24 AM, Plaintiff received a third autodialed text message this time containing a solicitation signed by Hotel Vitale, from JDV, again using phone number 415-697-3367:

Sun, Sep 8, 3:24 AM

We apologize for the inconvenience this may have caused you, this is not spam. This promotion applies to in-house guest only. Thank you, Hotel Vitale

22.     Plaintiff believes that all three of the text message were sent from an autodialer due to the fact that the text messages were addressed impersonally. In addition, the first two text messages reference that they were sent in error likely due to a glitch.

23.     Plaintiff also believes the 3 text messages were sent from an autodialer because when 415-697-3367 is called, an automated message states that this is a text message-only number.

24.     Based on an investigation conducted by Plaintiff's attorneys, when "help,"

"STOP," and "START" are sent to 415-697-3367, an automatic response is produced thereby

confirming the use of an autodial system associated with the phone number.



25.     Plaintiff has never provided Defendant with consent to send automated text

messages to him.

26.     The unauthorized text messaged that were sent by JDV as alleged herein, harmed

Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Tehrani's

use and enjoyment of his cellular phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

27.     There are a number of complaints online from consumers that received the same autodialed text messages that Plaintiff received, or similar texts:

- "I am keep getting txt message from this number… 'Please disregard the previous 2 text messages. These were sent in error and we truly apologize for the inconvenience.'"[6]

- "Getting texts from that number claiming to be hotel vitale."[7]

- "They keep sending me spam texts all morning and I haven't stayed there in 2 years. PLEASE STOP!!!!"[8]

28.     Seeking redress for these injuries, Tehrani, on behalf of himself and a Class of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits unsolicited autodialed text messages to cellular telephones.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claim

29.     Plaintiff brings this action pursuant to Federal RuleS of Civil Procedure 23(b)(2) and 23(b)(3) on behalf of himself and all others similarly situated and seeks certification of the following Class:

**Autodialed No Consent Class:** All persons in the United States who from four years prior to the filing of this action through class certification (1) Defendant (or an agent acting on behalf of Defendant) text messaged, (2) on the person's cellular telephone number, (3) using a text messaging platform substantially similar to the text messaging platform used to text message Plaintiff, (4) for whom the Defendant claims (a) it obtained prior express consent in the same manner as the Defendant claims it supposedly obtained prior express consent to text message Plaintiff, or (b) they did not obtain prior express consent.

---

[6] https://whocallsme.com/Phone-Number.aspx/4156973367
[7] *Id.*
[8] https://www.yelp.com/biz/hotel-vitale-san-francisco-4?sort_by=date_desc

30.     The following individuals are excluded from the Class: (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, its subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion from the Class; (5) the legal representatives, successors or assigns of any such excluded persons; and (6) persons whose claims against the Defendant have been fully and finally adjudicated and/or released. Plaintiff anticipates the need to amend the Class definition following appropriate discovery.

31.     **Numerosity**: On information and belief, there are hundreds, if not thousands of members of the Class such that joinder of all members is impracticable.

32.     **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include, but are not necessarily limited to the following:

>     (a) whether Defendant used an automatic telephone dialing system to send text messages to Plaintiff and the members of the Autodialed No Consent Class;
>
>     (b) whether the conduct of the Defendant constitutes a violation of the TCPA; and
>
>     (c) whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

33.     **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Class, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting

CLASS ACTION COMPLAINT
-9-

this action on behalf of the members of the Class, and have the financial resources to do so.

Neither Plaintiff nor his counsel has any interest adverse to the Class.

34.    **Appropriateness**: This class action is also appropriate for certification because

Defendant has acted or refused to act on grounds generally applicable to the Class and as a

whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

of conduct toward the members of the Class and making final class-wide injunctive relief

appropriate. Defendant's business practices apply to and affect the members of the Class

uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with

respect to the Class, not on facts or law applicable only to Plaintiff. Additionally, the damages

suffered by individual members of the Class will likely be small relative to the burden and

expense of individual prosecution of the complex litigation necessitated by Defendant's actions.

Thus, it would be virtually impossible for the members of the Class to obtain effective relief

from Defendant's misconduct on an individual basis. A class action provides the benefits of

single adjudication, economies of scale, and comprehensive supervision by a single court.

**<u>FIRST CAUSE OF ACTION</u>**
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff and the Autodialed No Consent Class)**

35.    Plaintiff repeats and realleges paragraphs 1 through 34 of this Complaint and

incorporates them by reference.

36.    Defendant JDV sent unwanted solicitation text messages to cellular telephone

numbers belonging to Plaintiff and the other members of the Autodialed No Consent Class using

an autodialer.

---

CLASS ACTION COMPLAINT
-10-

37.     These solicitation text messages were sent *en masse* without the consent of the Plaintiff and the other members of the Autodialed No Consent Class to receive such solicitation text messages.

38.     Defendant's conduct was negligent, wilful, or knowing.

39.     Defendant has, therefore, violated 47 U.S.C. § 227(b)(1)(A)(iii). As a result of Defendant's conduct, Plaintiff and the other members of the Autodialed No Consent Class are each entitled to between $500 and $1,500 for each and every text message.

### PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Tehrani, individually and on behalf of the Class, prays for the following relief:

a)  An order certifying the Class as defined above, and appointing Plaintiff as the representative of the Class and his attorneys as Class Counsel;

b)  An award of actual and/or statutory damages and costs;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited texting activity, and to otherwise protect the interests of the Class; and

e)  Such further and other relief as the Court deems just and proper.

### JURY DEMAND

Plaintiff Tehrani requests a jury trial.

Respectfully Submitted,

**PAYAM TEHRANI**, individually and on behalf of those similarly situated individuals

Dated: December 12, 2019          By:   /s/ *David Ratner*
                                         David S. Ratner, Esq.

1

2

David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

3

4

5

Rachel Kaufman*
rachel@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

6

7

*Attorneys for Plaintiff and the putative Classes*

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT
-12-