David S. Ratner (SBN 316267)
david@davidratnerlawfirm.com
DAVID RATNER LAW FIRM, LLP
33 Julianne Court
Walnut Creek, CA 94595

Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro Hac Vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Attorneys for Plaintiff and all others similarly situated

[additional counsel listed on signature page]

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PAYAM TEHRANI,** individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>**DH VITALE MANAGER, LLC,** a Delaware limited liability company, and **SF TREAT, LP,** a Delaware limited partnership,<br><br>*Defendants.* | No. 3:19-cv-08168-JSC<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION TO AMEND THE COMPLAINT**<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>Hearing: July 15, 2021 at 1:30 p.m.<br>Hon. Edward M. Chen<br>Courtroom 5<br><br><br>**ORAL ARGUMENT REQUESTED** |

### Notice of Motion and Motion

**PLEASE TAKE NOTICE** that on July 15, 2021 at 1:30 p.m., at Courtroom 5 – 17th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102, before the Honorable Edward M. Chen, Plaintiff will and hereby moves for an order granting leave to file his proposed Third Amended Complaint.  The motion will be based on this Notice and Motion, the Memorandum of Points and Authorities below, any further argument and evidence that may be presented at the hearing, and all matters of which this Court may take judicial notice.

Relief requested:  Movant seeks an order granting Plaintiff leave to file his Proposed Third Amended Complaint (attached as Ex. 1).  A proposed order is attached to this motion.

Dated: June 3, 2021                                   By: /s/ *Jonas Jacobson*
                                                                    Jonas Jacobson
                                                                    DOVEL & LUNER LLP
                                                                    Counsel for Plaintiff and the putative class

i

**Table of Contents**

I. The scope of the autodialer prohibition under *Facebook*. .................................................. 1

II. Plaintiff's proposed amendment states an autodialer claim under *Facebook*..................... 6

III. Defendants' "purchased list" distinction has no merit.......................................................... 7

# Table of Authorities

**Cases**

*Facebook, Inc. v. Duguid*,
   141 S. Ct. 1163 (2021) .................................................................................................. passim

*Foman v. Davis*,
   371 U.S. 178 (1962) ............................................................................................................. 6

*Satterfield v. Simon & Schuster, Inc.*,
   569 F.3d 946 (9th Cir. 2009) ............................................................................................ 3, 8

*Sharkey v. O'Neal*,
   778 F.3d 767 (9th Cir. 2015) ............................................................................................... 6

**Statutes**

47 U.S.C.S. § 227 ................................................................................................................. 2, 4, 9

**Legislative History**

H.R. Rep. No. 102-317 ............................................................................................................ 5, 9

**Memorandum of Points and Authorities**

*Facebook* changed the definition of an autodialer under the TCPA. Under *Facebook*, the facts of this case support an autodialer claim. Plaintiff has prepared a proposed amended complaint setting forth these facts in detail. Ex. 1 (Proposed Third Amended Complaint). The liberal amendment standard requires that Plaintiff be granted leave to file.

**I. The scope of the autodialer prohibition under *Facebook*.**

The TCPA prohibits using an "automatic telephone dialing system" (an autodialer) to call cell phones. 47 U.S.C. § 227 (b)(1)(A). The statute defines an autodialer as follows:

> (1) The term "automatic telephone dialing system" means equipment which has the capacity—
>    (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and
>    (B) to dial such numbers.

47 U.S.C. § 227 (a)(1).

In *Facebook*, the Supreme Court clarified this definition. *Facebook, Inc. v. Duguid*, 141 S. Ct. 1163, 1167 (2021). Here is the Court's statement of the issue and its primary holding:

> The question before the Court is whether that [autodialer] definition encompasses equipment that can 'store' and dial telephone numbers, even if the device does not 'us[e] a random or sequential number generator.' It does not. To qualify as an 'automatic telephone dialing system,' a device must have the capacity either to store a telephone number using a random or sequential generator or to produce a telephone number using a random or sequential number generator.

*Id.* at 1167.

So, an autodialer must "have the capacity" to store or produce a phone number "using a random or sequential number generator." But what constitutes "using a random or sequential number generator"? The Court also answered this question.

1

Motion to Amend                                                                 No. 3:19-cv-08168-JSC

To be an autodialer, a device does not have to randomly or sequentially *create* the phone numbers themselves. Instead, the device may use a random number generator to determine the order in which to pick phone numbers from a preexisting list. As the Court explained:

> [A]n autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list. It would then store those numbers to be dialed at a later time.

*Facebook*, 141 S. Ct. at 1172 n.7.

Therefore, an autodialer is not limited to systems that randomly or sequentially create phone numbers. Instead, an autodialer also encompasses a system that takes a "preproduced list" of phone numbers (e.g., a database of thousands of contacts), uses a "random number generator to determine the order in which to pick phone numbers from [the] list," and then "store[s] those numbers to be dialed at a later time." *Id.*

The Court explained that its holding on this point was necessary to ensure that the statutory language "to store" had meaning. The plaintiff had argued that, if a system is storing phone numbers using a random or sequential number generator, "such a device would necessarily 'produce' [phone] numbers using the same generator technology, meaning 'store or' in §227(a)(1)(A) is superfluous." *Id*. To overcome this argument and give meaning to "to store," the Court held that "using a random or sequential number generator" was not limited to creating the phone numbers themselves. As a result, the word "store" captures systems that use randomly generated numbers (which are not themselves phone numbers) to order and store "preproduced" phone numbers for calling. Thus, the "store" prohibition is broader than the "produce" prohibition, and there is no redundancy. *Id.* ("'It is no superfluity,' however, for Congress to include both functions in the autodialer definition so as to clarify the domain of prohibited devices.").

In other words, based on Congress's inclusion of the word "store" in the statute, the Court confirmed that the TCPA protects people against more than just systems that "produce" random or sequential phone numbers to call (which would be little protection). The statute also protects people against systems that can use a random number generator to "store" preexisting phone numbers, to be automatically dialed in the stored order. And—beyond being compelled by the text of the statute—this serves the purpose of the TCPA. Systems that use lists of phone numbers in this way can make just as many (if not more) intrusive automatic calls. "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy." *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

And while the Supreme Court used a random number generator as an example, the statutory text compels applying the same holding to a system that uses a *sequential* number generator to order and store a preexisting list of phone numbers. A device may be an autodialer if it has "the capacity … to store a telephone number using a random or sequential generator." *Facebook*, 141 S. Ct. at 1167 (emphasis added); 47 U.S.C.§ 227 (a)(1). Thus, a device is an autodialer if it can take phone numbers from a preexisting list, use a *sequential* number generator to order and store those numbers, and then automatically dial the numbers in that order. [1]

The Court's holding on this point was compelled by the statutory text (i.e., it was required to give meaning to the words "to store"). But in any case, legislative history confirms

---

[1] The Court also confirmed that, to be an autodialer, a device need only have the "capacity" to use a random or sequential number generator to order and store a preexisting list of phone numbers for dialing, and need not actually be used to do this. *Facebook,* 141 S. Ct. at 1167; *id.* ("The question before the Court is whether that definition encompasses equipment that can 'store' and dial telephone numbers…" (emphasis added)); 47 U.S.C. § 227(a)(1) (the statute requires only the "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers.").

the Court's interpretation.  As the Court pointed out, when the TCPA was passed (in 1991) systems already existed that "used a random number generator to store numbers to be called later (as opposed to using a number generator for immediate dialing)."  *Facebook*, 141 S. Ct. at 1172. And, indeed, when Congress passed the TCPA, it was not solely concerned by older autodialing systems that randomly or sequentially created *phone numbers* —Congress was concerned about "[m]odern telemarketing software" that "organizes information on current and prospective clients into databases." H.R. Rep. No. 102-317, at 7.  For such systems, "[a]lthough the introduction of the computer has greatly increased the effectiveness and efficiency of telephone marketing, modern telemarketing techniques and equipment do not guarantee the emergence of ethical, unintrusive telephone solicitation practices." *Id.* at 8.

Here is an illustration of what a software database might look like for the kind of autodialer described in *Facebook*.  This system uses a list of preexisting phone numbers (e.g., marketing contacts).  It generates an index number using either a sequential number generator (e.g., 1001, 1002, 1003, etc.), or a random number generator, assigns the generated numbers to phone numbers from the list, and stores the information.  The system can then select sets of numbers to automatically dial (e.g., calling numbers 1,001-2,000).

| **Number** | **Name of Lead** | **Phone number** |
|---|---|---|
| … | **…** | **…** |
| 1001 | John Smith | 555-292-3885 |
| 1002 | Kathryn Johnson | 555-706-8392 |
| 1003 | Timony Weil | 555-389-1424 |
| 1004 | David Kelly | 555-195-8425 |
| 1005 | Samantha Caufield | 555-292-4829 |
| and so on … | **…** | **…** |

4

Motion to Amend                                                                                            No. 3:19-cv-08168-JSC

Because this device can use a random or sequential "number generator to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time," it is an autodialer. *Facebook,* 141 S. Ct. at 1172 n.7.

To be sure, the scope of the TCPA's autodialer provision is still limited and not all list dialers are autodialers. Take, for example, Facebook's system. That system "maintain[ed] a database that stored phone numbers." *Id.* at 1165. But there was no contention that it generated random or sequential numbers to order those phone numbers for mass dialing. Instead, it would "send automated text messages to those numbers each time the associated account was accessed by an unrecognized device or web browser. *Id.* at 1168. Thus, it was not an autodialer. *Id.*

To make this concrete, assume John Smith's Facebook account was accessed by an unrecognized device. Based on this event, the Facebook system would send a text to John Smith. Then, if Samantha Powers' account was later accessed by an unrecognized device, the system would send a text to her, based on this event. In this way, the Facebook system maintained a list of contacts and phone numbers, and stored that list in a database, but the system was not using a sequential (or random) number generator to queue up calls for mass dialing. Thus, it was not an autodialer.

Similarly, a smartphone stores a database of contacts, but it cannot automatically dial through the contact list in sequential or random order (e.g., automatically and randomly dialing every number stored in your phone). Thus, it is not an autodialer.

In sum, the TCPA does not solely protect the public from autodialer devices that use number generators to create the phone numbers—the statute protects the public from autodialers that randomly or sequentially generate numbers "to determine the order in which to pick phone numbers from a preproduced list" and "then store those numbers to be dialed at a later time."

5

Motion to Amend                                                    No. 3:19-cv-08168-JSC

*Facebook,* 141 S. Ct. at 1172.

**II.    Plaintiff's proposed amendment states an autodialer claim under *Facebook*.**

At this early stage, leave to amend must be "freely given" in the absence of "undue delay, bad faith or dilatory motive," "repeated failure to cure deficiencies by amendments previously allowed," "undue prejudice to the opposing party" or "futility of amendment."  *Sharkey v. O'Neal*, 778 F.3d 767, 774 (9th Cir. 2015) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). "Absent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Id.* (internal quotes omitted).  Here, there is no undue delay, dilatory motive, or bad faith.  Plaintiff's amendment is based on the *Facebook* opinion, which was only recently issued.  There is no prejudice to Defendants, as this case is in its early stages.  And, as addressed next, amendment is not futile. The proposed Third Amended Complaint (Ex. 1, "TAC") more than sufficiently pleads that the system used by Defendants to text Plaintiff is an autodialer under *Facebook*.

To text Plaintiff and others like him, Defendants used the TrustYou system.  TAC ¶¶14, 29.  This system includes a database of contacts that can be integrated with other CRM software. *Id.* at ¶15.  The system can create and send mass texting campaigns (e.g., to tens of thousands of contacts or more).  *Id.* at ¶16.

The TrustYou system can generate sequential numbers and store these numbers in its customer database, to index contacts.  *Id.* at ¶17.  When a mass texting campaign is initiated, the system can then automatically text customers in the stored, sequential order.  *Id.*  In addition, or in the alternative, when a group of contacts is selected for a mass texting campaign, the system can generate sequential numbers to indicate the texting order, store the selected contacts in this sequential order, and then text the contacts in the stored order.  *Id.; id.* at ¶18 ("If you want to send a message to several recipients, you could simply create an array of recipients and iterate

6

through each phone number in that array.").

Defendants' call logs reflect how mass texting works. *Id.* at ¶19. The call logs show Defendants sending out over 100,000 texts, sent every few seconds, 24 hours a day, over the course of 3 days. *Id.* This pattern reflects the fact that texts were queued up for mass delivery, in the generated and stored sequential order, and then sent out in that order. *Id.*

This is the kind of autodialer that the Supreme Court described in *Facebook*: one that uses a random or sequential number generator to "determine the order in which to pick phone numbers from a preproduced list" and "store those numbers to be dialed at a later time." *Facebook,* S. Ct. at 1172 n.7. Thus, the complaint states an autodialer claim under *Facebook*.

### III. Defendants' "purchased list" distinction has no merit.

At the recent conference, Defendants asserted that a system that uses a list of past customers (and not a list purchased from a third party) cannot be an autodialer under *Facebook*. This assertion has no support in *Facebook,* the statute, legislative history, or the purpose of the TCPA.

*First*, the Supreme Court drew no such distinction between purchased lists and lists of past customers. In footnote 7, the Court describes an autodialer that uses a "a random number generator to determine the order in which to pick phone numbers from **a preproduced list,"** i.e., a preexisting list of phone numbers not created by the autodialing system itself. *Facebook*, 141 S. Ct. at 1172 n.7 (emphasis added). The Court did not limit its analysis to a preproduced list of numbers purchased from a third party (as opposed to one that comes from a database of past customers). Nor did it suggest any basis for such a limitation.

*Second*, Defendants' distinction has no support in the statute. The statute defines an autodialer as a system that can "store or produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers." 47 U.S.C.S. § 227 (a)(1). The statute

7

makes no distinction between telephone numbers that come from a purchased list or a customer database—what matters is that the system "us[es] a random or sequential number generator" to "store or produce" the phone numbers.

*Third*, legislative history confirms that Congress was not just concerned with purchased lists—it was concerned about "telemarketing software" that "organizes information on *current* and *prospective* clients into databases," i.e., current and past customers. H.R. Rep. No. 102-317, at 7 (emphasis added).

Finally, the distinction Defendants try to draw would defeat a key purpose of the TCPA. "The purpose and history of the TCPA indicate that Congress was trying to prohibit the use of ATDSs to communicate with others by telephone in a manner that would be an invasion of privacy." *Satterfield*, 569 F.3d at 954.  And an autodialing system that texts past customers *en masse*, and without consent, is just as intrusive as a system that texts phone numbers from a purchased list.  Here is a sample of the reactions that Defendants provoked when they repeatedly texted tens of thousands of purported past customers, at all hours of the night and day (e.g., 1 a.m., 2 a.m., 3 a.m., etc.), making phones vibrate and chime with alerts:

- "I've received 8 text all throughout the evening past midnight"
- "Pls stop sending SMS's around the clock"
- "I understand that you may be experiencing some technical difficulties, but this is the 14th text now."
- "Your computer has gone out of control sending us texts."
- "I am disturbed you have my number. Please stop texting."
- "If you text me one more time I am calling the police. Seriously this is ridiculous. You texted me at 5am. Stop!!!!"
- "Really?  At 3am?"

TAC ¶¶32-33.  This is exactly the kind of widespread intrusion that the TCPA was intended to

prevent.

\*   \*   \*

Because Plaintiff's proposed Third Amended Complaint states an autodialer claim under *Facebook*, Plaintiff should be granted leave to amend. A proposed order is attached.

Dated: June 3, 2021

By: /s/ *Jonas Jacobson*

Jonas Jacobson
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd.
Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

Rachel E. Kaufman
rachel@kaufmanpa.com
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

*Attorneys for Plaintiff and the putative Class*