David S. Ratner (SBN 316267)
david@davidratnerlawfirm.com
DAVID RATNER LAW FIRM, LLP
33 Julianne Court
Walnut Creek, CA 94595

Rachel E. Kaufman (CSB# 259353)
rachel@kaufmanpa.com
Avi R. Kaufman (*Pro Hac Vice*)
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

Attorneys for Plaintiff and all others similarly situated

[additional counsel listed on signature page]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **PAYAM TEHRANI,** individually and on behalf of all others similarly situated, | No. 3:19-cv-08168-JSC |
| *Plaintiff*, | **PLAINTIFF'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HIS MOTION TO AMEND** |
| v. | |
| **DH VITALE MANAGER, LLC,** a Delaware limited liability company, and **SF TREAT, LP,** a Delaware limited partnership, | Hearing: July 29, 2021 at 1:30 p.m. Hon. Edward M. Chen Courtroom 5 |
| *Defendants*. | **ORAL ARGUMENT REQUESTED** |

**Table of Contents**

I.   Defendants misread footnote 7. ............................................................................................ 1

II.  Defendants mischaracterize the context of *Facebook*. ........................................................ 4

III. Defendants strawman Plaintiff's arguments. ...................................................................... 6

IV.  Defendants cannot prevail by relying on older, out-of-Circuit cases that are superseded by *Facebook*. ........................................................................................................ 7

V.   Recent district court cases holding to the contrary are distinguishable and unpersuasive. ................................................................................................................................ 8

VI.  Another district court has agreed with Plaintiff's view of *Facebook*. ............................... 9

VII. Defendants' miscellaneous other arguments lack merit. .................................................. 10

# Table of Authorities

**Cases**

*ACA Int'l v. FCC*
  885 F.3d 687 (D.C. Cir. 2018) .................................................................................... 7, 8

*Barnett v. Bank of Am.*
  N.A., No. 3:20-cv-272-RJC-DSC, 2021 U.S. Dist. LEXIS 101171 (W.D.N.C. May 28, 2021) 9

*Carl v. First Nat'l Bank of Omaha*
  No. 2:19-cv-00504-GZS, 2021 U.S. Dist. LEXIS 111889 (D. Me. June 15, 2021) ............. 9, 10

*Coeur D'Alene Tribe v. Hammond*
  384 F.3d 674 (9th Cir. 2004) ........................................................................................ 3

*Facebook, Inc. v. Duguid*
  141 S. Ct. 1163 (2021) ........................................................................................ passim

*Marks v. Crunch San Diego, LLC*
  904 F. 3d 1041 (2018) ................................................................................................. 6

*McEwen v. NRA of Am.*,
  No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021) .................... 9

*Timms v. USAA Fed. Sav. Bank*
  No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021) ...................... 8

*United States v. Johnson*
  256 F.3d 895 (9th Cir. 2001) ........................................................................................ 3

*United States v. Montero-Camargo*
  208 F.3d 1122 (9th Cir. 2000) ...................................................................................... 3

*United States v. Spivey*
  781 F. Supp. 676 (D. Haw. 1991) ................................................................................. 4

**Statutes**

47 U.S.C.S. § 227 .................................................................................................... 2, 9

H.R. Rep. No. 102-317 ............................................................................................... 6

Defendants misread footnote 7, mischaracterize the rest of *Facebook*, and strawman Plaintiff's arguments. [1] Plaintiff's analysis of footnote 7 (and *Facebook*) is the view most consistent with the Supreme Court's words and reasoning. Moreover, Plaintiff's actual analysis (not the strawman version) draws a reasonable line between autodialers and non-autodialers, that is consistent with both the words and purpose of the statute.

### I. Defendants misread footnote 7.

Defendants contend that, when the Supreme Court referred to a "preproduced list" of phone numbers in footnote 7, it meant a list that of phone numbers that had been sequentially or randomly generated (i.e., created) by the autodialer system. *See, e.g.*, ECF No. 92 at 17. Defendants explain that the Court cited to an example autodialer patent from an amicus brief. According to Defendants, that patent described a system that both: (1) generated phone numbers with a sequential number generator; and (2) used a random number generator (that generated numbers that were not phone numbers) to order the list for automatic dialing. Therefore, according to Defendants, the Supreme Court did not really mean what it actually said in footnote 7 and instead meant that an autodialer has to produce the phone numbers themselves. But this cannot be correct, because it is inconsistent with the Court's reasoning.

In footnote 7, the Court explained why its reading of the statute did not render the words "[or] store" superfluous. The plaintiff there (Duguid) argued that, if an autodialer must *always* generate (i.e., produce) phone numbers, then it is superfluous to include the alternative "[or]

---

[1] In a footnote (ECF No. 92 at 4 n.5)., Defendants claim that Plaintiff did not address the issues that the Court asked it to: (1) what is a sequence number generator and (2) can there be a claim where the call numbers are from defendant's customer list. This is false. Plaintiff addressed both issues. ECF No. 90 at 4 (what is a sequence number generator), 7-9 (can there be a claim where the call numbers come from defendant's customer list?). Defendants largely ignore or strawman Plaintiff's analysis.

store" requirement in the statute. *Facebook* n.7 ("Duguid argues that such a device would necessarily 'produce' numbers using the same generator technology, meaning 'store or' in §227(a)(1)(A) is superfluous."). An example illustrates Duguid's point. Say that an autodialer produced the following list of phone numbers, by randomly generating the digits of each phone number:

| …. |
|---|
| 928-292-3885 |
| 812-706-8392 |
| 102-389-1424 |
| 567-195-8425 |
| 467-292-4829 |
| … |

By definition, any autodialer that does this "produce[d] telephone numbers to be called, using a random or sequential number generator." § 227 (a)(1)(A). And if all autodialers must do this, it is superfluous to include the statutory language capturing autodialers that merely "store … telephone numbers to be called, using a random or sequential number generator." *Id.*

This cannot be right. So, to solve this superfluidity problem, the Supreme Court held that an autodialer does not have to produce the phone numbers themselves (and can instead generate numbers that indicate the stored, automatic dialing order for a preexisting list of phone numbers). *Facebook* at n.7. If, as Defendants suggest, the Supreme Court really meant that an autodialer must always produce the phone numbers themselves, this would just prove (not rebut) plaintiff Duguid's superfluidity argument. And if the Supreme Court's reading rendered statutory text

superfluous, the Supreme Court could not have reached the holding that it reached. Thus, Defendants' analysis cannot be correct.

In contrast, the interpretation that is consistent with the Supreme Court's words and its logic is that the Court was specifically referring to the example autodialer system's ability to generate numbers (that were not themselves phone numbers) to order and store phone numbers for automatic dialing. This explains why the statute includes the words "[or] store": this additional language captures autodialer systems that take an existing list of phone numbers and use a random or sequential number generator to order and store the calls for automatic dialing. *Facebook* at n.7.[2]

Defendants suggest, in the alternative, that the Supreme Court's words can be ignored because they are mere dicta. This argument fails on multiple levels.

*First,* it fails on its own terms. In the Ninth Circuit, "our precedent requires that we give great weight to dicta of the Supreme Court." *Coeur D'Alene Tribe v. Hammond*, 384 F.3d 674, 683 (9th Cir. 2004). "We do not treat considered dicta from the Supreme Court lightly" or "blandly shrug them off because they were not a holding." *United States v. Montero-Camargo*, 208 F.3d 1122, 1132 n.17 (9th Cir. 2000) (cleaned up). What Defendants are suggesting— disregarding the Supreme Court's words because they are purportedly dicta—is error in the Ninth Circuit. And when the required "great weight" is given to the Court's words, Plaintiff's amended complaint states an autodialer claim.

---

[2] To be sure, the Supreme Court provided an alternative argument to rebut Duguid's superfluidity point. *Facebook* n.7 ("In any event, even if the storing and producing functions often merge, Congress may have 'employed a belt and suspenders approach' in writing the statute."). But under controlling law, that the Supreme Court provided alternative reasoning is not grounds to simply ignore its point about ordering a preproduced list of phone numbers. *See United States v. Johnson*, 256 F.3d 895, 915 n.8 (9th Cir. 2001) (rejecting the "fallacy" that "alternative holdings are dicta because neither is necessary to the result.").

*Second,* footnote 7 is not dicta, even under Defendants' implicit definition (that everything unnecessary to the primary holding is dicta). In footnote 7, the Court rebutted one of the plaintiff's key arguments and explained why its holding did not render the statutory words "to store" superfluous. If the Court's interpretation rendered statutory words superfluous, as the plaintiff contended, the Court could not have adopted that interpretation. That is, the Court could not have held that the "the clause 'using a random or sequential number generator' modifies both verbs that precede it ('store' and 'produce')." *Facebook* at 1169. Thus, the reasoning of footnote 7 was necessary to the Court's primary holding. *See United States v. Spivey*, 781 F. Supp. 676, 680 (D. Haw. 1991) ("This holding was not dicta but rather was necessary to address defendant's argument that state law should govern.").

## II. Defendants mischaracterize the context of *Facebook*.

Defendants contend that Plaintiff makes the same argument that the Supreme Court rejected in *Facebook*. *See, e.g.*, ECF No. 92 at 8. Defendants are wrong. In *Facebook,* plaintiff Duguid argued that the phrase "using a random or sequential number generator" did not modify "store" at all (and instead only modified "produce"). *Facebook* at 1165 ("Duguid's insistence that a limiting clause should ordinarily be read as modifying only the phrase that it immediately follows"). Therefore, according to Duguid, an autodialer did not necessarily have to use a random or sequential number generator at all. *Id.* The Supreme Court rejected that argument. *Id.*

That is nothing like what Plaintiff is saying here. Plaintiff agrees that all autodialers must be capable of using a random or sequential number generator (that was the primary holding of *Facebook*). Plaintiff has pleaded that Defendants' system does this, in the way that the Court described in footnote 7. That is certainly not a theory that the Supreme Court rejected in *Facebook* (to the contrary, footnote 7 endorsed it).

4

Reply ISO Mot. to Amend                                                                                     No. 3:19-cv-08168-JSC

Defendants imply that their system is just like the one in *Facebook* (which was not an autodialer). This is also wrong.

As Plaintiff explained, the Facebook system was not an autodialer because, although it maintained a database with a list of phone numbers, it only texted specific individuals (and did not mass text). ECF No. 90 at 5. Specifically, it did not use a random or sequential number generator to order calls for mass dialing. Defendants have no response to this distinction. In fact, Defendants accidentally admit it, asserting: "The Court rejected the [Duguid] plaintiff's argument" that Facebook's system "met the definition of an ATDS (for either random or sequential number generation)" because the Facebook system "makes 'targeted' calls 'linked to specific accounts.'" ECF No. 92 at 11.

In contrast, as Plaintiff pleads, Defendants were not using their TrustYou system to text targeted accounts (e.g., to text a person staying at the hotel about housekeeping). Instead, they used the system to indiscriminately mass text tens of thousands of former customers. And to do that, the system generated sequential numbers to store the phone numbers, order them, and then mass text them in the stored order. ECF No. 90 at 6-8.

Defendants assert that, in *Facebook,* the Supreme Court held that the Facebook system was not an autodialer because all systems that use lists of phone numbers (and don't generate phone numbers) are not autodialers. That holding, however, appears nowhere in *Facebook*. To the contrary, in footnote 7, the Supreme Court said the opposite.

Defendants point out that the Supreme Court discussed problems with autodialers tying up emergency lines and tying up all the lines of a business. Defendants are saying that a system that uses phone numbers from a preexisting list is not an autodialer because it is unlikely to cause these problems (as opposed to a system that is generating the phone numbers themselves). But the Supreme Court never held that these are the only harms the TCPA was intended to prevent.

5

Nor is the statute written to cover only these harms. And when Congress passed the TCPA, it was not solely concerned by older autodialing systems that randomly or sequentially created phone numbers —Congress was concerned about "[m]odern telemarketing software" that "organizes information on current and prospective clients into databases." H.R. Rep. No. 102-317, at 7.  And in any case, the Court's background discussion of the harms the TCPA was intended to prevent cannot possibly justify ignoring the Court's express words and statutory interpretation in footnote 7.

Defendants assert that, because the Court reversed the Ninth Circuit's decision in *Marks v. Crunch San Diego, LLC*, 904 F. 3d 1041, 1053 (2018), the Court necessarily held that an autodialer cannot encompass systems that use preexisting lists of phone numbers.  Defendants misunderstand *Marks* and *Facebook*. Here is the Supreme Court's description of the *Marks* holding that it reversed:

> [T]he Ninth Circuit held that Duguid had stated a claim under the TCPA by alleging that Facebook's notification system automatically dialed stored numbers. An autodialer, the Court of Appeals held, need not be able to use a random or sequential generator to store numbers; it need only have the capacity to "'store numbers to be called'" and "'to dial such numbers automatically.'" *Facebook*, 141 S. Ct. at 1168 (quoting Marks).

The holding that the Supreme Court reversed is that an autodialer "need not be able to use a random or sequential generator to store [phone] numbers." *Id.*  And in doing so, the Supreme Court made clear that one way an autodialer can use a random or sequential number generator "to store [phone] numbers" is by using such a generator to "determine the order in which to pick phone numbers from a preproduced list" and then "store those [phone] numbers to be dialed at a later time." *Facebook,* 141 S. Ct. at 1172 n.7.

### III.     Defendants strawman Plaintiff's arguments.

Defendants suggest that Plaintiff is asserting that any system that dials from a list of stored numbers is an autodialer.  But as the Facebook system illustrates, that is not the case.  Not

all list dialers are autodialers. Nor is a common smartphone. ECF No. 90 at 5. But as pleaded, Defendants' system is an autodialer because it makes use of a random or sequential number generator to mass text.

Defendants assert that, under Plaintiff's reading, any system would be an autodialer because "[phone] numbers chosen from any preset list must necessarily be chosen randomly or sequentially." ECF No. 93 at 8. This is wrong. Systems can do what the Facebook system did, and dial only specifically (not randomly or sequentially) chosen numbers, one at a time. That is not an autodialer. In contrast, if a system is selecting swaths of phone numbers from a preproduced list, generating a random or sequential order for automatic dialing, and then automatically dialing all the selected phone numbers in the stored order, that is an autodialer under *Facebook*.

### IV. Defendants cannot prevail by relying on older, out-of-Circuit cases that are superseded by *Facebook*.

Defendants cite district court and circuit cases that predate *Facebook*, holding that an autodialer must generate the phone numbers themselves. *See, e.g.,* ECF No. 92 at 13 n.8. None of these cases helps Defendants because they are all superseded by *Facebook's* holdings. The issue here is what *Facebook* means.

Defendants also quote some of these cases misleadingly. For example, Defendants quote the following from *ACA Int'l v. FCC*, 885 F.3d 687, 702 (D.C. Cir. 2018):

> To see why, it is helpful to understand that the ruling distinguishes between use of equipment to "dial random or sequential numbers" and use of equipment to "call[] a set list of consumers." Anytime phone numbers are dialed from a set list, the database of numbers must be called in *some* order—either in a random or some other sequence. As a result . . . "dialing random or sequential numbers" cannot simply mean dialing from a set list of numbers in random or other sequential order: if that were so, there would be no difference between "dialing random or sequential numbers" and "dialing a set list of numbers[.]"

7

Reply ISO Mot. to Amend                                                                        No. 3:19-cv-08168-JSC

ECF No. 92 at 10.  Defendants omitted a key sentence from this quote.  The D.C. Circuit was explaining why, in the context of a specific FCC ruling, the "<u>the ruling's</u> reference to 'dialing random or sequential numbers' means generating those numbers and then dialing them." *ACA Int'l*, 885 F.3d at 702 (emphasis added).  The D.C. Circuit was not addressing the meaning of "random or sequential number generator" in the statute itself, which does not contain the words "dialing random or sequential numbers."  And in any case, an old FCC ruling cannot supersede *Facebook*.

**V.      Recent district court cases holding to the contrary are distinguishable and unpersuasive.**

Defendants rely on *Timms v. USAA Fed. Sav. Bank*, No. 3:18-cv-01495-SAL, 2021 U.S. Dist. LEXIS 108083 (D.S.C. June 9, 2021).  *Timms* is not controlling, analogous, or persuasive.

*First,* in *Timms*, the plaintiff failed to provide any "explanation or supporting evidence" that the accused system generated numbers "to determine the order in which to pick phone numbers from a preproduced list." *Id.* at *12-13 (citing *Facebook*).  Here, in contrast, Plaintiff pleads a detailed theory and facts on this issue.  *See* ECF No. 57 at 5-7.

*Second*, in *Timms*, the court held that a system can only be an autodialer if it uses a *random* number generator to "randomly select[] the dialing order of the telephone numbers from the predetermined list."  *Id.* at *14.  However, while the Supreme Court used a random number generator as an example, its holding cannot be so limited.  As plaintiff explained (and as Defendants do not rebut) the statutory text compels applying the same holding to a system that uses a sequential number generator to order and store a preexisting list of phone numbers.  ECF No. 90 at 3.

*Third,* the logic of *Timms* is inconsistent with the Supreme Court's reasoning.  In *Timms,* the district court read footnote 7 the same way that Defendants do here (i.e., that the Supreme Court was referring to a "preproduced list" of phone numbers that were also generated by the

8

autodialing system). As explained above, however, that would destroy the very point that Supreme Court was making (that "store" was not superfluous). This cannot be the right reading.

Defendants also rely on *Barnett v. Bank of Am.*, N.A., No. 3:20-cv-272-RJC-DSC, 2021 U.S. Dist. LEXIS 101171 (W.D.N.C. May 28, 2021). But in that case, the court did even address footnote 7. *Id.* And there, unlike here, the plaintiff offered no explanation of how the accused system "uses a random or sequential number generator." *Id.* at *10.

Defendants further rely on *McEwen v. NRA of Am.*, No. 2:20-cv-00153-LEW, 2021 U.S. Dist. LEXIS 72133 (D. Me. Apr. 14, 2021). There, the court held that: "After the *Duguid* opinion, the ATDS portion of the claim requires an allegation that InfoCision used a random or sequential number generator to place a call to Plaintiff's cellphone, not merely a claim that its dialing system has that capability." *Id.* at *19. But here, Plaintiff alleges exactly what was missing from that case: that Defendants actually used the TrustYou system's mass texting capability (which uses a sequential number generator) to text plaintiff. ECF No. 90-1 ¶¶25-29. [3]

### VI. Another district court has agreed with Plaintiff's view of *Facebook*.

Other district courts have gone Plaintiff's way on this issue. As another district court recently found: "Duguid suggested that an ATDS could potentially fall under TCPA if it 'use[s] a random number generator to determine the order in which to pick phone numbers from a preproduced list [and] then store[s] those numbers to be dialed at a later time.'" *Carl v. First Nat'l Bank of Omaha*, No. 2:19-cv-00504-GZS, 2021 U.S. Dist. LEXIS 111889, at *21 n.10 (D. Me. June 15, 2021) (quoting footnote 7). Therefore, "there is a trialworthy question as to

---

[3] *McEwen* is also erroneous. *Facebook* confirmed that, to be an autodialer, a device need only have the "capacity" to use a random or sequential number generator to order and store a preexisting list of phone numbers for dialing, and need not actually be used to do this. *Facebook* at 1167 ("The question before the Court is whether that definition encompasses equipment that can 'store' and dial telephone numbers…" (emphasis added)); § 227(a)(1) (the statutory definition requires only the "capacity" to "store or produce telephone numbers to be called, using a random or sequential number generator" and "dial such numbers.").

whether the Voice Portal system had the capacity to 'store a telephone number using a random or sequential generator,'" i.e., as to whether the system is an autodialer. *Id.* (rejecting defendant's argument for summary judgment). There, like here, the "Voice Portal system operated 'campaigns,' which consisted of files with a list of accounts to call. These campaigns were loaded into the Voice Portal system and stored for later automatic dialing." *Id* at *6*. Thus, here, Defendant cannot prevail on a futility argument. In fact, here, where the standard is the motion to dismiss standard (and not the summary judgment standard like in *Carl*), there is more reason to reject Defendant's futility contentions.

### VII. Defendants' miscellaneous other arguments lack merit.

DH Vitale contends that, even if the Court adopts Plaintiff's view of *Facebook*, the complaint does not state a claim because it alleges only that Defendants' system uses a sequential generator (and not a random generator) to order, store, and dial phone numbers. ECF No. 92 at 19. As Plaintiff explained, however, under the statutory text, the Supreme Court's illustrative example in footnote 7 must apply equally to sequential number generators (and not just random number generators). ECF No. 90 at 3. Defendants have no answer to this analysis.

DH Vitale asserts that it would be prejudiced by amendment because the case is "meritless" and because Plaintiff is changing theories. ECF No. 92 at 21. But because amendment is not futile, the case has merit. And the reason that Plaintiff is changing autodialer theories is because *Facebook* just changed the law. That Plaintiff is promptly responding to a change in the law cannot be a reason to deny amendment.

SF Treat points out that the TCPA is not intended to "preclude companies from communicating with their customers." ECF No. 93 at 3-4. That is true. But this glides right over the problem: Defendants were not communicating with current customers who consented to communication. They were automatically and repeatedly texting tens of thousands of former

10

Reply ISO Mot. to Amend                                                                       No. 3:19-cv-08168-JSC

customers, who were not staying at the hotel, had no plans to stay, and did not consent to receiving these texts. And they were doing this at all hours of the night. This is precisely what the TPCA was intended to preclude. ECF No. 90 at 7-8.

* * *

Because Plaintiff's proposed Third Amended Complaint states an autodialer claim under *Facebook*, Plaintiff should be granted leave to amend.

Dated: June 30, 2021                                By: /s/ *Jonas Jacobson*

Jonas Jacobson
jonas@dovel.com
DOVEL & LUNER, LLP
201 Santa Monica Blvd.
Suite 600
Santa Monica, CA 90401
Telephone: (310) 656-7066

Rachel E. Kaufman
rachel@kaufmanpa.com
Avi R. Kaufman
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

David S. Ratner, Esq.
David Ratner Law Firm, LLP
33 Julianne Court
Walnut Creek, CA 94595

*Attorneys for Plaintiff and the putative Class*