# Exhibit 3

No *Shepard's* Signal™
As of: August 25, 2021 7:32 PM Z

# *Jance v. Homerun Offer, LLC*

United States District Court for the District of Arizona

July 29, 2021, Decided; July 30, 2021, Filed

No. CV-20-00482-TUC-JGZ

**Reporter**
2021 U.S. Dist. LEXIS 143145 *; 2021 WL 3270318

Josh M. Jance, Plaintiff, v. Homerun Offer LLC, et al., Defendants.

## Core Terms

alleges, telephone, caller, messages, telemarketing, entities, solicitation, vicarious, motion to dismiss, phone number, numbers, website, fail to state a claim, agency relationship, phone call, violations, searched

**Counsel:** [*1] Josh M Jance, Plaintiff, Pro se, Tucson, AZ.

For Homerun Offer LLC, a NV corporation, Defendant: Benjamin Christian Nielsen, John Maston O'Neal, LEAD ATTORNEYS, Quarles & Brady LLP - Phoenix, AZ, Phoenix, AZ.

**Judges:** Honorable Jennifer G. Zipps, United States District Judge.

**Opinion by:** Jennifer G. Zipps

## Opinion

**WO**

**ORDER**

Plaintiff brings this action against Defendants Homerun Offers LLC and All Star Investments alleging violations of the Telephone Consumer Protection Act (TCHomerun Offer, LLCPA), *47 U.S.C. § 227*. Plaintiff alleges Homerun Offer made 29 calls to Plaintiff in violation of the Act and alleges All Star Investments is vicariously liable for Homerun Offer's phone calls. Pending before the Court is Defendants' Motion to Dismiss Plaintiff's Second Amended Complaint (SAC) for failure to state a claim and lack of personal jurisdiction over Defendant All Star Investments. (Doc. 19.) Plaintiff filed a Response (Doc. 22), and Defendants filed a Reply. (Doc. 23.) Defendants also filed a Notice of Supplemental Authority, to which Plaintiff responded. (Doc. 25.) For the following reasons, the Court will grant in part and deny in part Defendants' motion to dismiss.

**BACKGROUND**

Plaintiff's SAC contains the following allegations. Plaintiff is a resident of Tucson, Arizona. (Doc. 16, ¶ 18.) Between [*2] January 16 and July 6, 2020, Plaintiff received 29 calls on his cell phone from a caller purporting to represent a "local investor," and inquiring if Plaintiff had any interest in selling his property. (Doc. 16, ¶¶ 11-12, 18.) Each call came from a 520-402-10xx number, with the last two digits ranging from 17-29. (*Id.*) For each call he answered, Plaintiff alleges that he heard "a brief hesitation of several seconds" before the caller spoke to him. (*Id.* at 19.) After hearing the content of the call, which Plaintiff describes as "a generic and cursory inquiry" into purchasing his house, Plaintiff would give a standard response that included requesting to be placed on the company's do-not-call list. (*Id.* ¶¶ 11, 15-16.) Plaintiff also alleges that "at no point" did the caller specifically identify on whose behalf he was calling or provide company contact information. (*Id.* ¶¶ 16-17.) Plaintiff alleges that on those occasions when he called back the numbers of the caller shown on his phone, an automated answering system played an identical message for all of the different phone numbers.[1] (*Id.* ¶ 75.)

When Plaintiff searched the phone numbers on www.whitepages.com, the website categorized the [*3] phone numbers as "Non-Fixed VoIP," or Voice over Internet Protocol. (*Id.* ¶¶ 20-21.) VoIP is "a category of

---

[1] The recorded message was: "Thanks for contacting us. Press one to receive a cash offer on your home. Press two to be removed from our list." (Doc. 16, ¶¶ 74-75.)

hardware and software that enables people to use the internet as the transmission medium for telephone calls, sending voice data in packets using internet protocols (IP) rather than by traditional circuit transmissions of the [public switched telephone network] PSTN." (*Id.* ¶ 21.)[2] When Plaintiff searched the phone numbers on www.reportedcalls.com, the website attributed the telephone number prefix 520-402 to "Location: Arizona" and "Rate Center: Benson." (*Id.* ¶ 23.) Plaintiff alleges that Defendants do not currently, nor during the time the calls were made, operate or contract with a call center in Benson, Arizona. (*Id.* ¶ 24.) Plaintiff also alleges that because the calls came from what he claims is a non-existent call center in Benson, the 520-402-10xx telephone numbers were "spoofed,"[3] which would require specialized telephone equipment like an automatic telephone dialing system (ATDS). (*Id.* ¶¶ 27-28.)

On the sixth call, Plaintiff inquired into what company the caller worked for, and the caller replied, "Homerun Offer." (*Id.* ¶ 52.) Plaintiff found the website homerunoffer.com, [*4] which listed a company address in Las Vegas, Nevada. (*Id.* ¶ 60.) Plaintiff then located the business on the State of Nevada Corporation Commission (NCC) website, which listed Ryan Pineda as Homerun Offer's registered agent. (*Id.* ¶¶ 62-63.) When Plaintiff searched the NCC website for "Ryan Pineda," he found All Star Investments, also a Las Vegas company. (*Id.* ¶ 64.) Plaintiff later found a September 24, 2019 Instagram post under the account "ryanpinedashow," which featured a picture of a man whom Plaintiff presumes to be Ryan Pineda, wearing a University of Arizona T-shirt. The post reads: "Once we decided to start investing in Tucson, I bought this shirt. After a couple of weeks of marketing, we've got two deals locked up! Now I can wear it and pledge my allegiance to the Wildcats." (*Id.* ¶ 70; Doc. 22, Ex. B.) Plaintiff also searched the Pima County Recorder's Office (PCRO) and found "no property transactions" for Ryan Pineda or Homerun Offer. (Doc. 16, ¶¶ 65-67.) But the database did show six "property purchases" for All Star Investments made between October 2019 and June 2020. (*Id.* ¶ 68.)

Plaintiff concludes that for some or all of the six property purchases made by All Star Investments [*5] between October 2019 and June 2020, the initial contact with the other parties to those transactions came about as a direct result of the telemarketing activities of Homerun Offer. (*Id.* ¶ 71.) Plaintiff began receiving telemarketing calls from Homerun Offer less than four months after the Instagram post. (*Id.* ¶ 69.) All Star Investments closed their first property purchase in Pima County 16 days after the Instagram post. (*Id.* ¶ 72.)

Plaintiff attempted to serve process on Homerun Offer at the NCC-listed address. The landlord informed Plaintiff that Homerun Offer had moved and provided Plaintiff with Homerun's new phone number: 702-381-9317. (*Id.* ¶¶ 80-83, 89-90.) When Plaintiff called the number, the automated recording was identical to the one attributed to Homerun Offer, but the message identified the business as "Forever Home Realty." (*Id.* ¶¶ 91-92, 104.) Plaintiff found the website foreverhomelv.com, which included a listing for and picture of Ryan Pineda. (*Id.* ¶ 94.) Plaintiff also searched the NCC database for Forever Home and discovered Ryan Pineda was listed as Forever Home's registered agent. (*Id.* ¶ 95.)

Plaintiff alleges that All Star Investments has actual authority over, [*6] and can be held vicariously liable for Homerun Offer's phone calls to Plaintiff because Ryan Pineda is the President and CEO[4] of both Homerun Offer and All Star Investments, and Pineda controls their actions as well as non-party Forever Home Realty as an affiliate company. (*Id.* ¶¶ 107-110, 112.) Plaintiff specifically alleges that All Star Investments has actual authority over the telemarketing activities of Homerun Offer. (*Id.* ¶ 111.)

On August 25, 2020, Plaintiff filed this lawsuit in Pima County Superior Court. (Doc. 1-3, p. 27.) Defendants removed the action to this Court. (Doc. 1.) Plaintiff filed his SAC on December 3, 2020. (Doc. 16.) In the SAC, Plaintiff alleges that the calls by Home Run Offer violated *§ 227(b)* and *§ 227(c) of the TCPA*.

In the pending motion, Defendants seek dismissal of the SAC under *Federal Rules of Civil Procedure 12(b)(6)*

---

[2] Plaintiff cites Webopedia for the definition of VoIP. (*Id.* ¶ 21.)

[3] "Spoofing" refers to the deliberate falsification of caller identification information to disguise the caller's identity. *Spiegel v. EngageTel Inc., 372 F. Supp. 3d 672, 682 (N.D. Ill. 2019)*.

[4] Relying on corporation commission records, Plaintiff initially alleges Pineda was the "Registered Agent" of Homerun Offer and All Star Investments. (Doc. 16, ¶ 63.) Later, Plaintiff alleges Pineda is the President and CEO of both businesses. (*Id.* ¶¶ 107-10.) Although Plaintiff does not explain how he determined Pineda was President and CEO, Defendants do not appear to dispute the allegation.

and *12(b)(2)*. (Doc. 19.)

## DISCUSSION

### I. Motion to Dismiss for Failure to State a Claim

#### A. Applicable Law

To survive a *Rule 12(b)(6)* motion to dismiss for failure to state a claim upon which relief can be granted, "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)* (citations and internal **[*7]** quotation marks omitted). "While a complaint attacked by a *Rule 12(b)(6)* motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id. at 555* (citations and internal quotation marks omitted). "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint." *Id. at 563*. Dismissal is appropriate under *Rule 12(b)(6)* if the facts alleged do not state a claim that is "plausible on its face." *Id. at 569*. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)*. When assessing the sufficiency of the complaint, all well-pleaded factual allegations are taken as true and construed in the light most favorable to the nonmoving party, *Keates v. Koile, 883 F.3d 1228, 1234 (9th Cir. 2018)*, and all reasonable inferences are to be drawn in favor of that party as well. *Caltex Plastics, Inc. v. Lockheed Martin Corp., 824 F.3d 1156, 1159 (9th Cir. 2016)*.

#### 1. Plaintiff states a claim for TCPA violations under *§ 227(b)*

To state a claim under *§ 227(b) of the TCPA*, Plaintiff must plausibly allege: (1) Defendants called **[*8]** a cellular telephone number; (2) with an automatic telephone dialing system (ATDS); and (3) without recipient's prior express consent. *47 U.S.C. § 227(b)(1)*; *Meyer v. Portfolio Recovery Assocs., LLC, 707 F.3d 1036, 1043 (9th Cir. 2012)*. Defendants argue Plaintiff fails to state a claim for a violation of *§ 227(b)* because Plaintiff does not allege facts sufficient to show that Defendants used an ATDS to call Plaintiff.

An ATDS is "equipment that has the capacity—(A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial[5] such numbers." *§ 227(a)(1)*; see *Facebook, Inc. v. Duguid, 141 S. Ct. 1163, 1170, 209 L. Ed. 2d 272 (2021)* ("Congress' definition of an [ATDS] requires that in all cases, whether storing or producing numbers to be called, the equipment in question must use a random or sequential number generator."). In determining whether a defendant called with an ATDS, the central issue is not whether the defendant *used* an ATDS when making the call, but whether defendant's "equipment has the *capacity* 'to store or produce telephone numbers to be called, using a random or sequential number generator.'" *Flores v. Adir Int'l, LLC, 685 Fed. Appx. 533, 534 (9th Cir. 2017)* (quoting *Satterfield, 569 F.3d at 951*) (emphasis added); *Thomas v. Dun & Bradstreet Credibility Corp., 100 F. Supp. 3d 937, 945 (C.D. Cal. 2015)* ("[A] system need not actually store, produce, or call randomly or sequentially generated telephone numbers' to fall within the definition of an ATDS; rather, 'it need only have the capacity **[*9]** to do it.'" (internal citations and footnote omitted)). Furthermore, "the use of prerecorded messages or artificial voices for purposes of solicitation are not required for equipment to be an ATDS under the TCPA." *McCullough v. Maximum Title Loans LLC, CV-19-00717-PHX-JJT, 2019 U.S. Dist. LEXIS 141323, 2019 WL 3933754, at *3 (D. Ariz. Aug. 20, 2019)*.

Whether a defendant has an ATDS is "often a fact exclusively within the defendant's possession." *Mogadam v. Fast Eviction Serv., SACV 14-01912 JVS, 2015 U.S. Dist. LEXIS 49045, 2015 WL 1534450, at *2 (C.D. Cal. Mar. 30, 2015)*. Courts have acknowledged "the difficulty a plaintiff faces" in pleading the existence of such a system with specificity because it is "a factual question that is not properly resolved without formal

---

[5] The Supreme Court clarified that equipment does not fall outside the ATDS definition simply because it may rely on human intervention: "But all devices require some human intervention . . . We decline to interpret the TCPA as requiring such a difficult line-drawing exercise around how much automation is too much." *Facebook, 141 S. Ct. at 1171 n. 6*.

discovery or at this stage of the proceedings." *Hickey v. Voxernet LLC, 887 F. Supp. 2d 1125, 1129 (W.D. Wash. 2012)* (quoting *Knutson v. Reply!, Inc., 10CV1267 BEN, 2011 U.S. Dist. LEXIS 156409, 2011 WL 1447756, at \*1 (S.D. Cal. Apr. 13, 2011)*); *Blair v. CBE Group Inc., 13-CV-134-MMA WVG, 2013 U.S. Dist. LEXIS 68715, 2013 WL 2029155, at \*4 (S.D. Cal. May 13, 2013)*. Courts have considered circumstantial or indirect allegations—such as content of messages, context and manner in which they were sent, frequency of messages, etc.—sufficient to "raise a reasonable expectation that discovery will reveal evidence of the matter complained of." *Knutson, 2011 U.S. Dist. LEXIS 156409, 2011 WL 1447756, at \*1* (quoting *Bell Atl. Corp., 550 U.S. at 556*) (internal quotation marks omitted); *see also Flores, 685 Fed. Appx. at 533-34*; *Thomas v. Dun & Bradstreet Credibility Corp., 100 F. Supp. 3d 937, 940, 945 (C.D. Cal. 2015)*; *Hickey, 887 F. Supp. 2d at 1128-1129*; *Alcaraz v. Adobe Sys. Inc., SACV 1600184CJCJCGX, 2016 U.S. Dist. LEXIS 190310, 2016 WL 9136961, at \*1, \*3 (C.D. Cal. May 13, 2016)*; *Mogadam, 2015 U.S. Dist. LEXIS 49045, 2015 WL 1534450, at \*1-2*; *Vaccaro v. CVS Pharmacy, Inc., 13-CV-174-IEG RBB, 2013 U.S. Dist. LEXIS 99991, 2013 WL 3776927, at \*1-2 (S.D. Cal. July 16, 2013)*; *Blair, 2013 U.S. Dist. LEXIS 68715, 2013 WL 2029155, at \*1, \*4*.

Accepting Plaintiff's factual allegations as true and viewing them in the light most favorable to Plaintiff, the Court finds that the Plaintiff has plausibly pleaded that Home Run Offer used an ATDS to place calls to Plaintiff. *See Thomas, 100 F. Supp. 3d at 945* ("Plaintiff need not prove as much as this stage **[\*10]** of the proceedings."); *see also Alcaraz, 2016 U.S. Dist. LEXIS 190310, 2016 WL 9136961, at \*3* ("At this stage . . . [Plaintiff] need not show that it is more likely than not that the calls were made with an ATDS—he need only show that it is plausible that an ATDS was used to make the calls."); *Mogadam, 2015 U.S. Dist. LEXIS 49045, 2015 WL 1534450, at \*3* ("No single fact in particular must necessarily be present or absent to meet the sufficiency requirement for pleading the use of an ATDS in a TCPA claim . . . ."). Plaintiff alleges he had no business relationship with Defendants, did not give Defendants his contact information, and did not consent to be contacted by Defendants. *See, e.g., Thomas, 100 F. Supp. 3d at 940, 945* (plaintiff never granted defendant permission to contact him about any of defendant's business credit services). The phone numbers were attributed to VoIP and misleading caller ID information. Plaintiff alleges that when he answered calls from the 520-402-10xx number, there was a "brief hesitation of several seconds" before the caller began speaking. *See, e.g., McCullough, 2019 U.S. Dist. LEXIS 141323, 2019 WL 3933754, at \*1, \*3* (plaintiff experienced a pause lasting several seconds before being connected to a live representative); *Cabiness v. Educ. Fin. Sols., LLC, No. 16-CV-01109-JST, 2016 U.S. Dist. LEXIS 142005, 2016 WL 5791411, at \*7 (N.D. Cal. Sept. 1, 2016)* ("general allegations [of use of an ATDS] are sufficiently bolstered by specific descriptions of the 'telltale' pause after plaintiff picked up each call **[\*11]** until the agent began speaking . . . and thus renders plausible the conclusory allegation that an ATDS was used.") (internal quotations marks and citation omitted). The calls were generically formatted and scripted, and they never referenced the Plaintiff directly. *See, e.g., Flores, 685 Fed. Appx. at 533-34* (plaintiff received text messages that were "generically formatted" and "appeared to be scripted").[6] Despite the Plaintiff specifically asking to be placed on the do-not-call list, calls from the 520-402-10xx number continued repeatedly (28 more times) for nearly six months. *See, e.g., Thomas, 100 F. Supp. 3d at 940, 945* (defendant continued to call plaintiff's cell phone despite plaintiff's requests to be placed on the company's do-not-call list). In light of these allegations, the Court concludes Plaintiff plausibly pleaded the Defendant's use of an ATDS, supported with "enough contextual facts to rise above mere speculation." *Mogadam, 2015 U.S. Dist. LEXIS 49045, 2015 WL 1534450, at \*2*.

**2. Plaintiff fails to state a claim for TCPA violations under § 227(c)**

Defendants argue that Plaintiff fails to state a claim for solicitation or telemarketing under *§ 227(c)* because Plaintiff fails to establish that the calls constituted telephone solicitation or telemarketing as defined by the TCPA. The Court agrees.

To state a claim **[\*12]** under *§ 227(c) of the TCPA*, Plaintiff must plausibly allege that Defendants continued initiating "telephone solicitation" after his request to be put on the do-not-call list. *47 U.S.C. § 227(c)(1)*, *(5)*. The TCPA was designed "to protect residential[7]

---

[6] "[A] text message is a 'call' within the meaning of the TCPA." *Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 952 (9th Cir. 2009)*.

[7] The Supreme Court has held that "residential" encompasses cellular phones. *Campbell-Ewald Co. v. Gomez, 577 U.S. 153,*

telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object." *§ 227(c)(1)*. The statute defines "telephone solicitation" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" being offered. *§ 227(a)(4)*. Federal regulations—which implement the methods and procedures for protecting the privacy rights set forth by the TCPA—define "telemarketing" as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services" being offered. *47 C.F.R. § 64.1200(f)(13)*. Neither definition encompasses a scenario in which the caller offers to buy something from the recipient of the call. *Knutson v. Blue Light Sec., Inc., 17CV134-LAB (JMA), 2018 U.S. Dist. LEXIS 36745, 2018 WL 1172611, at *4 (S.D. Cal. Mar. 6, 2018)*. Moreover, the regulation's wording is aimed at calls that directly advertise and "not calls that are related in some attenuated way to advertising or telemarketing the caller intends to conduct in the future." *Id.*

Here, Plaintiff alleges **[*13]** that the purpose of the calls was to purchase Plaintiff's home, not to induce Plaintiff to make a purchase from the caller. Because the TCPA clearly defines the terms solicitation and telemarketing, and that definition does not include offers to purchase, Plaintiff fails to state a claim under *§ 227(c)*.

### 3. Plaintiff fails to state a claim of vicarious liability

Defendants argue that Plaintiff fails to plausibly allege that All Star Investments can be held vicariously liable for phone calls made by Homerun Offer. The Court agrees.

To establish vicarious liability for TCPA violations by All Star Investments, Plaintiff must make a prima facie showing that All Star Investments had the right to substantially control Homerun Offer, and Homerun Offer acted as an agent of the entity. "[T]he TCPA imposes vicarious liability where an agency relationship, as defined by federal common law, is established between the defendant and a third-party caller." *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 877 (9th Cir. 2014)*, aff'd *577 U.S. 153, 136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*.[8] The right of an entity to "substantially control" an agent's activities is a "fundamental tenet" of an agency relationship. *Williams v. Yamaha Motor Co. Ltd., 851 F.3d 1015, 1024-25 (9th Cir. 2017)*. A "'[defendant] can be held liable even if it did not physically send the messages at issue' as long as [p]laintiff plausibly **[*14]** alleges [d]efendant ultimately controlled sending the message." *Hickey, 887 F. Supp. 2d at 1129* (quoting *In re Jiffy Lube Int., Inc., Text Spam Litigation, 847 F. Supp. 2d 1253, 1258-59 (S.D. Cal. 2012)*). The plaintiff has the burden to show the agency relationship between the entity and third-party caller, and without it, a court may not attribute a third-party caller's TCPA violations to another entity. *Henderson v. United Student Aid Funds, Inc., 918 F.3d 1068, 1072 (9th Cir. 2019)* (citing *Gomez, 768 F.3d at 879*).

Viewing the allegations in the light most favorable to Plaintiff, the Court concludes that Plaintiff failed to plausibly allege that All Star Investments had the right to substantially control Homerun Offer, or that Homerun Offer acted as All Star Investment's agent when it made phone calls to Plaintiff. The "simple fact that the same individual (Ryan Pineda) is the President and CEO of both the agent [Homerun Offer] and the principal [All Star Investments] as well as the parent company for both agent and principal," as Plaintiff alleges (Doc. 22, p. 10), is not sufficient to show that All Star Investments controlled or directed Homerun Offer's phone calls to Plaintiff. *See Kristensen v. Credit Payment Servs., Inc., 879 F.3d 1010, 1014 (9th Cir. 2018)* (affirming district court's dismissal of numerous entities where the non-party that sent the texts had not contracted with the entities and was neither the agent nor purported agent of the entities; also affirming dismissal **[*15]** of marketing company that had an agency relationship with the non-party sender because plaintiff presented no evidence that the company had actual knowledge that the non-party was sending text messages in violation of TCPA). Common ownership between two entities is insufficient to establish an agency relationship.

Plaintiff alleges in the SAC that Homerun Offer, LLC, is the company that either sets up or controls the content of the messages on the companies' automated answering systems as directed by All Star Investments, LLC. (Doc. 16, ¶ 78.) But the SAC contains no factual allegations which would support this conclusion. Ryan Pineda may be involved in numerous organizations, but

---

*136 S. Ct. 663, 193 L. Ed. 2d 571 (2016)*, aff'g *Gomez v. Campbell-Ewald Co., 768 F.3d 871, 876-77 (9th Cir. 2014)*.

[8] The FCC relies on the Restatement (Third) of Agency as the federal common law of agency. *Kristensen v. Credit Payment Servs. Inc., 879 F.3d 1010, 1014 (9th Cir. 2018)*.

his involvement is insufficient, in and of itself, to plausibly show that one company was an agent for another, even if the entities use the same recorded messages. Similarly, the SAC does not include any facts which would support Plaintiff's allegation that some or all of the six property purchases made by All Star investments between October 2019 and June 2020, came about as the result of the telemarketing activities of Homerun Offer. Plaintiff's conclusory allegations are insufficient to state a plausible **[*16]** claim. *See* Twombly, 550 U.S. at 555 (a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions). Accordingly, the Court will dismiss All Star Investments from this case.[9]

**CONCLUSION**

When granting a motion to dismiss, a court is generally required to grant a plaintiff leave to amend, even if no request to amend the pleading was made, unless the amendment would be futile. *See* Cook, Perkiss, & Liehe v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). Here, the Court concludes amendment would be futile as to Plaintiff's cause of action pursuant to § 227(c). The Court further concludes that it is unlikely that Plaintiff could amend his complaint to state a cause of action against All Star Investments absent discovery of additional facts to support the claims of vicarious liability. Accordingly, the Court will dismiss All Star Investments without prejudice at this juncture. Plaintiff may seek leave to amend should Plaintiff discover additional facts to support his claim against All Star Investments.[10] The Court notes that the discovery of additional facts would also be relevant to All Star Investments' asserted defense of lack of personal jurisdiction.

Accordingly,

IT IS ORDERED that Defendants' Motion to Dismiss (Doc. 19) is GRANTED IN **[*17]** PART and DENIED IN PART. The Motion is granted to the extent that Plaintiff's claims against All Star Investments and Homerun Offer under 47 U.S.C. § 227(c) are dismissed without leave to amend. The Motion is also granted to the extent that Plaintiff's claims against All Star Investments are dismissed. The Motion is denied to the extent it requests dismissal of Plaintiff's claim against Homerun Offer for violation of 47 U.S.C. § 227(b).

IT IS FURTHER ORDERED that Defendant Homerun Offer shall file its Answer to the Second Amended Complaint within fourteen (14) days of the filing date of this Order.

Dated this 29th day of July, 2021.

/s/ Jennifer G. Zipps

Honorable Jennifer G. Zipps

United States District Judge

---

**End of Document**

---

[9] Because the Court will dismiss All Star Investments for failure to state a claim, the Court need not consider All Star's additional argument regarding lack of personal jurisdiction.

[10] Before Plaintiff files a third amended complaint, Plaintiff must comply with Rule 15(a) of the Federal Rules of Civil Procedure and L.R. Civ. 15.1, Rules of Practice and Procedure of the U.S. District Court of Arizona. Plaintiff is also advised that an amended complaint must be retyped or rewritten in its entirety and may not incorporate any part of the Second Amended Complaint by reference. An amended complaint supersedes the Second Amended Complaint. **Ferdik v. Bonzelet, 963 F.2d 1258, 1262 (9th Cir. 1992)**; Hal Roach Studios v. Richard Feiner & Co., Inc., 896 F.2d 1542, 1546 (9th Cir. 1990). After amendment, the Second Amended Complaint is treated as nonexistent. **Ferdik, 963 F.2d at 1262**.